**In re Daniel Alan WAKEFIELD, Debtor.**

**Daniel Alan Wakefield, Plaintiff,**

v.

**Southwest Securities, Inc., Defendant.**

**Bankruptcy No. 01–32889–SAF–7. Adversary No. 01–3697.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

July 19, 2004.

Dane Scott Field, Goins, Underkofler, et al., Dallas, TX, Counsel for Plaintiff.

Daniel P. Elms, Baker & McKenzie, Dallas, TX, Counsel for Defendant.

## MEMORANDUM OPINION AND ORDER ON REMAND

STEVEN A. FELSENTHAL, Chief Judge.

It is the law of this case that Southwest Securities, Inc., in violation of 11 U.S.C. § 525(b), terminated the employment of Daniel Alan Wakefield, the debtor, because he filed a petition for relief under Chapter 7 of the Bankruptcy Code. *Wakefield v. SWS Securities, Inc. (In re Wakefield)*, 293 B.R. 372, 383 (N.D.Tex.2003). Southwest Securities, Inc., attempts to avoid the consequences of its unlawful act by requesting the court to preclude Wakefield's lawsuit by application of the doctrine of judicial estoppel. Southwest Securities contends that Wakefield should have amended his bankruptcy schedules to include the § 525(b) cause of action even though it arose after the commencement of Wakefield's Chapter 7 case and even though the cause of action was not and could not be property of the bankruptcy estate. The doctrine of judicial estoppel has no application to the facts of this case.

At trial, the court held that judicial estoppel did not apply. On appeal, the United States District Court for the Northern District of Texas reversed that determination because, according to the appellate court, the trial court made an error of law by applying a "purely objective standard" to the question of Wakefield's motive in not scheduling the § 525(b) claim. The appellate court vacated the trial court's judgment in part and remanded for further proceedings "on the judicial estoppel issue." *Wakefield*, 293 B.R. at 375.

On remand, on April 12, 2004, the court held a status conference with the parties, setting a briefing schedule and a hearing on the remanded issue. Wakefield filed his brief on remand on May 3, 2004. Southwest Securities filed its responsive brief on remand on May 24, 2004. Wakefield filed his reply brief on May 24, 2004. The court held a hearing on remand on June 2, 2004. As mandated by the appellate court, this court addresses the judicial estoppel issue.

Southwest Securities contends that the appellate court remanded a "specific issue" to this court—namely, "whether there is evidence of a subjective motive for Wakefield to conceal his § 525(b) claim from his trustee and creditors." Defendant's Reply to Plaintiff's Brief on Remand at 1–2, *Wakefield v. Southwest Securities, Inc. (In re Wakefield)*, adversary no. 01–3697 (Bankr.N.D. Tex. reply filed May 24, 2004). The appellate court did not limit the remand to the narrow issue highlighted by Southwest Securities. The appellate court vacated the judicial estoppel decision and remanded for further consideration of the judicial estoppel issue, with a mandate to apply the legal standards articulated by the appellate court for the trial court's exercise of discretion. On remand, this

court must now exercise its discretion, applying the standards articulated by the appellate court.

## Judicial Estoppel

■■■ "Judicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position[.]' " *In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir. 1999) (quoting *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir.1988)). "The purpose of the doctrine is 'to protect the integrity of the judicial process', by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest[.]' " *Id.* (quoting *Brandon,* 858 F.2d at 268).

Judicial estoppel is applied when two requirements are met: the position of the party to be estopped is clearly inconsistent with its previous one, and the party convinced the court to accept the previous position. *See id.* at 206. In *Coastal Plains* the Fifth Circuit at least implicitly recognized the additional requirement that the party to be estopped must have acted intentionally rather than inadvertently. *See id.* at 206 (noting that many courts impose such a requirement) and 210–13 (without expressly adopting the requirement, addressing on the merits plaintiffs' contention that they had acted unintentionally and inadvertently); *In re West Delta Oil Co. v. Hof,* 2002 WL 1963317, at *4 (E.D.La. Aug.21, 2002) (holding that *Coastal Plains* "did not blanketly adopt other circuits' requirement of intent or bad faith in order for judicial estoppel to apply," but applied elements of "inadvertence defense" "[w]ithout explicitly adopting or rejecting the possibility of an 'inadvertence defense' to judicial estoppel generally"). The *Coastal Plains* panel held that, "in considering judicial estoppel *for bankruptcy cases,* the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Coastal Plains* 179 F.3d at 210 (footnote omitted).

*Wakefield,* 293 B.R. at 378–79.

## Inconsistent Position

■■■ Southwest Securities contends that Wakefield should have scheduled his § 525(b) cause of action in his originally filed schedules or by filing an amended schedule. At trial, the court found that Wakefield's position in the § 525(b) lawsuit was inconsistent with his schedules as filed, and not amended. *Wakefield v. Southwest Securities, Inc. (In re Wakefield),* adversary no. 01–3697 at 17 (Bankr. N.D.Tex. Oct. 17, 2002). This court respectfully disagrees. As the appellate court has vacated the judicial estoppel decision, this court may re-examine the question. Indeed, in its decision on appeal, the appellate court recognized the propriety of re-examining the question. The court opined:

> If the bankruptcy court on remand follows reasoning that distinguishes between property of the estate and Wakefield's personal property, it should re-evaluate whether this analysis must be conducted under the first prong of the *Coastal Plains* test rather than under the intentional/inadvertent component. If the court holds that Wakefield had no obligation to disclose his § 525(b) cause of action because it was not property of the estate, and that his chapter 7 schedules could not have been inconsistent with the filing of the adversary proceeding, this reasoning would fall within the first prong of *Coastal Plains. See Coastal Plains,* 179 F.3d at 206 (addressing whether position of party to be

estopped is clearly inconsistent with previous position).

*Wakefield,* 293 B.R. at 382.

Wakefield filed his petition for relief under Chapter 7 of the Bankruptcy Code on April 3, 2001. 11 U.S.C. § 301. The commencement of the case created "an estate." 11 U.S.C. § 541(a). The "estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property *as of the commencement of the case.*" 11 U.S.C. § 541(a)(1) (emphasis added). The debtor must file a schedule of assets. 11 U.S.C. § 521(1). The debtor may exempt some of those assets from the estate. 11 U.S.C. § 522. The Chapter 7 trustee must "collect and reduce to money the property of the estate" and "investigate the financial affairs of the debtor." 11 U.S.C. § 704(1) and (4).

Official forms have been promulgated for use as the schedules required to be filed by § 521(1). Schedule B (Personal Property) requires that the debtor list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." Official Bankr. Form 6.

A claim for recovery of money by the debtor constitutes property. However, by definition, a claim under § 525(b) cannot arise until *after* the commencement of the bankruptcy case.

Section 525(b) provides:

No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—(1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act; (2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or (3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(b).

By its express terms, § 525(b) applies to "an individual who *is or has been* a debtor under this title." *Id.* A "debtor" means "person ... concerning which a case under this title has been commenced." 11 U.S.C. § 101(13). Therefore, no claim under § 525(b) exists until a person becomes a debtor after the commencement of a case under the Bankruptcy Code. *Brassfield v. Jack McLendon Furniture, Inc.,* 953 F.Supp. 1424, 1432–33 (M.D.Ala.1996).

As a result, the claim did not exist *as of* the commencement of the case. A debtor must schedule all his interest in property as of the commencement of the case. Obviously, a debtor has no duty to schedule the non-existence of a cause of action.

A claim under § 525(b) cannot be considered a "contingent" claim or an "unliquidated" claim as of the commencement of the case. A "claim" means a "right to payment, whether or not such right is ... unliquidated [or] ... contingent ...." 11 U.S.C. § 101(5). As discussed above, under the plain language of § 525(b), Wakefield had no right to payment until he became a debtor under the Bankruptcy Code *and* Southwest Securities committed the prohibited discriminatory act. Surely, Southwest Securities is not suggesting that Wakefield should have anticipated that his employer, a publicly traded company, being advised by a prestigious law firm with a bankruptcy section, would terminate his

employment if he filed a bankruptcy petition. Surely, Southwest Securities is not contending in this federal court that a debtor should have a crystal ball projecting discriminatory practice under § 525(b). Under § 525(b), the Bankruptcy Code does not create a right to payment contingent on a person committing the discriminatory act. Likewise, there is no basis for calculating damages as of the commencement of the case.

■ Southwest Securities argues, however, that after it fired Wakefield, Wakefield should have amended his schedule to include the post-petition claim. Despite its violation of § 525(b), Southwest Securities faults the debtor for unilaterally determining that the post-petition employment termination need not be reported to the trustee and the creditors on an amended schedule. A Chapter 7 debtor has no duty to amend his schedules to report a post-petition right to payment for which the bankruptcy estate may claim no interest.

None of the subsections of § 541(a), establishing property of the estate, apply to a claim under § 525(b). *Coastal Plains* does not stand for the proposition that a Chapter 7 debtor has a duty to disclose assets that the debtor obtains post-petition. The court in *Coastal Plains* addressed the continuing duty of a debtor under Chapter 11 of the Bankruptcy Code, citing authority for the proposition that knowledge of any type of claim "prior to confirmation" "must be disclosed." *Coastal Plains,* 179 F.3d at 208. First, the court reads *Coastal Plains* as involving a pre-petition cause of action. Second, Chapter 11 requires that a plan proponent file a disclosure statement containing adequate information about the debtor for a hypothetical investor "to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a)(1). That disclosure includes the post-petition, pre-plan-of-reor-

ganization activities of the debtor. Third, a Chapter 11 plan of reorganization may address all obligations of a debtor through confirmation of the plan, thereby including pre-petition and post-petition obligations. 11 U.S.C. §§ 1123 and 1129. Fourth, confirmation of a Chapter 11 plan results in the discharge of "any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A). Necessarily, then, the Chapter 11 debtor must disclose all debts, pre- and post-petition, that may be discharged upon confirmation of a plan. These provisions have no application to Chapter 7. 11 U.S.C. § 103(g).

With all due respect, this court disagrees with the proposition that any provision of the Bankruptcy Code requires a Chapter 7 debtor to disclose post-petition assets not within § 541(a) obtained after the commencement of a case but before the entry of an order of discharge. In that regard, the court invites the appellate court to reexamine the decision in *Heckler v. Product Dev. Corp.,* No. 3:00–CV–1187–R, 2002 WL 824091 (N.D.Tex. April 29, 2002). The court in *Heckler* relied on *Coastal Plains,* a Chapter 11 case not applicable to Chapter 7, as discussed above. The court in *Heckler* also relied on *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n,* 932 F.Supp. 859 (E.D.Tex. 1996), which also dealt with a Chapter 11 confirmed plan of reorganization.

The importance of reading the Bankruptcy Code as a whole cannot be overstated. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 370–72, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Thus, a Chapter 13 case, like a Chapter 11 case, imposes different obligations on a debtor than does a Chapter 7 case because it provides the debtor with different rights. Under Chapter 13, property of the bankruptcy estate includes, in addition to the property speci-

fied in § 541, "all property of the kind specified in such section that the debtor acquires *after* the commencement of the case but before the case is closed, dismissed or converted ... [and] earnings from services performed by the debtor *after* the commencement of the case but before the case is closed, dismissed, or converted ...." 11 U.S.C. § 1306(a)(1) and (2). Except as provided in a confirmed Chapter 13 plan or order confirming a plan, the debtor remains in possession of all property of the estate. 11 U.S.C. § 1306(b). For Chapter 13 to work, given that definition of property of the estate, the Chapter 13 debtor has a continuing duty to disclose property and earnings acquired after the commencement of the case. The Chapter 13 debtor's ability to confirm a plan and ultimately obtain a discharge turns, in part, on those assets and earnings. 11 U.S.C. § 1322 and 1325. These provisions have no application to Chapter 7. 11 U.S.C. § 103(i).

Wakefield has not taken a position inconsistent with a previous position taken before the court.

### Convince Court to Act

■ At trial, Southwest Securities contended that Wakefield's inconsistent positions had been advanced to convince the court to accept his previous position, and, thereby, enter a discharge. The trial court agreed with that position. On re-examining the issue on remand, this court respectfully disagrees. To obtain a discharge under Chapter 7, the debtor must fulfill certain obligations. First, the debtor must file accurate schedules. As discussed above, the non-scheduling of a cause of action under § 525(b) in a Chapter 7 case does not implicate the accuracy of the schedules. Second, the debtor must attend his meeting of creditors. The debtor attended his meeting of creditors. At the meeting of creditors, Wakefield's attorney informed the Chapter 7 trustee about the termination of Wakefield's employment because he filed a bankruptcy petition. Third, the debtor cannot engage in any of the prohibited conduct under § 727. No complaint under § 727 had been filed in the case. Wakefield was therefore entitled to a discharge. The lack of an amended schedule listing an asset acquired after the commencement of the case that is not property of the bankruptcy estate and cannot be administered by the Chapter 7 trustee has no impact on the entry of a discharge order in a Chapter 7 case.

As the appellate court instructed, the purpose of the judicial estoppel doctrine is to protect the integrity of the judicial process. Wakefield's acts concerning the § 525(b) claim had no impact on the judicial process, and therefore, the judicial estoppel doctrine need not be applied to protect the integrity of the process. On the other hand, Southwest Securities undermined the integrity of the Bankruptcy Code, for which it is liable under § 525(b). Judicial estoppel is not a doctrine available to cleanse Southwest Securities of its liability.

In *Coastal Plains*, the Fifth Circuit observed that a debtor cannot "[c]onceal [its] claims; get rid of [its] creditors on the cheap, and start over with a bundle of [undisclosed, pre-bankruptcy] rights." *Coastal Plains*, 179 F.3d at 213 (quoting *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir.1993)). That scenario does not apply here. Wakefield did not conceal a pre-petition claim. Wakefield was entitled to his discharge. The judgment under § 525(b) merely restores his losses post-petition caused by Southwest Securities' discriminatory firing.

### Objective Inadvertence

■ Given the above findings, the court need not consider whether the lack of a

disclosure of the § 525(b) claim in amended schedules before the entry of the discharge was inadvertent. Nevertheless, for purposes of completeness, the court addresses the issue. The court recognizes the inherent difficulty of addressing the issue, given the above findings and conclusions. The parties shall read the following in light of this observation.

Courts do not apply judicial estoppel if the debtor had no motive for concealment. For the purpose of the analysis of motive, the court assumes Wakefield concealed an asset that should have been scheduled. At trial, the court applied a purely objective standard and found that Wakefield did not have a motive for concealment because, "objectively, [Wakefield's] concealment and subsequent discharge would have had no effect on such claim because it was owned by him and not by his estate under § 541(a)(7)." *Wakefield v. Southwest Securities, Inc. (In re Wakefield)*, adversary no. 01–3697 at 21 (Bankr.N.D.Tex. Oct. 17, 2002). The trial court had originally found a duty to file an amended schedule to include this post-petition claim. This court disagrees and has found to the contrary. But, even if an appellate court found such a duty, on remand, the court adopts the trial court's original finding regarding a purely objective analysis of motive.

In addition, given the court's finding on remand, the court further finds that Wakefield could have no objective motive to conceal the claim. The claim did not exist *as of* the commencement of the case. Wakefield was required to disclose assets that existed as of the commencement of the case, no other provision of § 541(a) being applicable.

### Subjective Inadvertence

The appellate court held that the motive determination should not be purely objective. *Wakefield*, 293 B.R. at 381. The appellate court also held that:

Lack of motive is one way of defeating judicial estoppel by establishing an inadvertent failure to satisfy a statutory disclosure duty in a bankruptcy case . . . . [A] party either must lack knowledge of the undisclosed claim or must have no motive to conceal it. Motive and subjective intent are closely-related concepts and are often intertwined in the law. *Id.* So the court must evaluate Wakefield's motive subjectively, as well as objectively. Stated somewhat differently, the "assessment of Wakefield's motive not to disclose his § 525(b) claim must include subjective considerations . . . ." *Id.*

Wakefield knew his employment with Southwest Securities had been terminated because of his bankruptcy case. Wakefield met with Kevin Marsh, Southwest Securities' branch manager, on or about April 9, 2001. Wakefield told Marsh that he was considering filing a bankruptcy petition. "Marsh advised Wakefield that filing for bankruptcy would be grounds for termination." *Wakefield*, 293 B.R. at 376. Wakefield's attorney had actually filed Wakefield's bankruptcy petition on April 3, 2001. Wakefield did not know the filing had been made when he met with Marsh. After the meeting, Wakefield's attorney advised Wakefield that, if terminated, he would have a claim against Southwest Securities. Wakefield's attorney discussed this issue with Marsh and others at Southwest Securities. Wakefield filed his bankruptcy schedules and statement of financial affairs on April 19, 2001. On April 27, 2001, Southwest Securities terminated Wakefield's employment.

Pursuant to the Bankruptcy Code's mandate, Wakefield attended his meeting of creditors. At the meeting of creditors, the Chapter 7 trustee questioned Wakefield about his income. Wakefield's attorney informed the Chapter 7 trustee that Southwest Securities had terminated

Wakefield's employment because Wakefield filed a bankruptcy case. The meeting of creditors occurred before the court granted Wakefield a discharge. Consequently, the trustee, who has a fiduciary duty to collect and liquidate property of the bankruptcy estate, knew that Wakefield believed his employment had been terminated by Southwest Securities because he filed a bankruptcy petition.

Wakefield's attorney concluded that the claim was not and could not be property of the estate. Wakefield's attorney did not advise Wakefield to file an amended schedule listing the claim. The trustee did not advise Wakefield to file an amended schedule. The trustee did not take any act to assert that the bankruptcy estate had any interest in the § 525(b) claim.

On June 29, 2001, the trustee filed a report with the court stating that the estate lacked non-exempt assets to liquidate. On July 25, 2001, the court entered an order granting Wakefield's discharge. On August 8, 2001, the court entered an order accepting the trustee's report and closing the case.

Although Wakefield believed he had the § 525(b) claim, his attorney discussed the reasons for the termination facially articulated by Southwest Securities. Wakefield therefore also knew that he faced a litigation risk that he would not prevail on his § 525(b) claim. Wakefield's attorney declined to represent Wakefield on a § 525(b) cause of action. Wakefield obtained new counsel to handle that litigation.

Wakefield's successor attorney chose to file a motion to reopen the bankruptcy case to bring the litigation in bankruptcy court.

On these facts, Wakefield knew he had a claim against Southwest Securities after he filed his bankruptcy case that arose because he filed a bankruptcy case. He also knew that the trustee had been informed that Wakefield had been fired because he filed a bankruptcy petition. Wakefield knew that the trustee took no action and, indeed, that the trustee immediately proceeded with a "no asset" administration of the estate. Wakefield knew that neither his attorney nor the trustee advised him to file an amended schedule to list the claim. Wakefield knew his attorney had concluded that the claim was not property of the bankruptcy estate.

The trial court initially observed that Wakefield may not have filed an amended schedule to list the claim to avoid litigation over whether the claim was property of the estate. On the other hand, the trial court held that the claim was not property of the bankruptcy estate. This court agrees with that conclusion. Indeed, as held above, this court has concluded that Wakefield had no obligation to file an amended schedule to list the claim. Wakefield had been informed by his attorney that the claim belonged to Wakefield, not to the bankruptcy estate. The trustee never asserted to the contrary; but, instead, filed a "no asset" report with the court. Under these circumstances, Wakefield had no reason to believe that he was concealing any asset that could be used by the trustee to pay his pre-petition creditors.

Southwest Securities argues that Wakefield had a motive to obtain a "windfall for himself, with no concern for his creditors." Defendant's Reply to Plaintiff's Brief on Remand at 4, *Wakefield v. Southwest Securities, Inc. (In re Wakefield)*, adversary no. 01–3697 (Bankr.N.D. Tex. reply filed May 24, 2004). That is a remarkable argument for Southwest Securities to lodge in federal court. Southwest Securities discriminated against Wakefield post-petition, in violation of the Bankruptcy Code, caus-

ing Wakefield to lose post-petition wages. The judgment allows Wakefield to recover this lost pay, hardly a "windfall."

Wakefield testified at his meeting of creditors that his schedules were true and correct as of the day of the meeting of creditors. The schedules were correct regarding the § 525(b) claim. Wakefield testified to the best of his knowledge. Even if an appellate court concluded that Wakefield had a duty to disclose the post-petition cause of action, the court infers that Wakefield reasonably believed he had no obligation nor even a reason to file an amended schedule listing the claim.

On these facts, the court finds that Wakefield lacked a subjective motive to conceal the § 525(b), assuming an appellate court disagreed with this court's conclusion that there had been no concealment to begin with.

### Combined Objective/Subjective Analysis

As motive and subjective intent are closely-related concepts, often intertwined, the court includes its objective analysis with its analysis of Wakefield's subjective intent. The court adopts its findings and conclusions in the above two sections of this memorandum opinion. The court makes the following additional findings of fact.

James Cunningham served as the Chapter 7 trustee in Wakefield's bankruptcy case. The court takes judicial notice that Cunningham has been a panel Chapter 7 trustee in this district from prior to the Wakefield case and continuing to the present. Cunningham is an experienced Chapter 7 trustee. The court takes judicial notice that Cunningham knows the provisions of the Bankruptcy Code. Cunningham would understand that a statement at a meeting of creditors that a debtor had been terminated from his employment because he filed a bankruptcy case would implicate § 525(b). Southwest Securities

faults Wakefield for not describing the circumstances of his firing. But the trustee did not need a further description to understand that if a claim existed under § 525(b), it would not be property of the estate. These facts result in an inference that Wakefield would not have a motive to conceal the cause of action when the experienced Chapter 7 trustee knew about a basis for a § 525(b) claim and took no action, but rather filed a "no asset" report.

Southwest Securities terminated Wakefield's employment on April 27, 2001. Southwest Securities knew that Wakefield contended that the termination violated § 525(b). Southwest Securities had a claim against Wakefield for an unpaid advance. Wakefield did not file amended schedules in the case. The trustee filed his "no asset" report after the meeting of creditors. Southwest Securities did not file an objection to the trustee's report nor did Southwest Securities file any pleading contending that Wakefield failed to disclose an asset or that the trustee should pursue the matter. Southwest Securities did not file an objection to Wakefield's discharge. Southwest Securities did not even examine Wakefield's schedules. These facts result in an inference that Wakefield would not have a motive to conceal the cause of action when Southwest Securities knew of the claim and itself took no action before discharge. Parenthetically, the court questions whether Southwest Securities itself should be estopped from asserting the judicial estoppel doctrine when it took no action in the bankruptcy case raising the issue that it has extensively pursued in this adversary proceeding, namely, a breached duty to disclose assets.

The logic supporting the inference is fortified by Southwest Securities' post-discharge actions or inactions. The court entered its order granting Wakefield's discharge on July 25, 2001. On August 8,

2001, the court closed the Wakefield bankruptcy case. On October 19, 2001, Wakefield filed his motion to reopen the case. 11 U.S.C. § 350. Wakefield served the motion to reopen on Southwest Securities. On November 14, 2001, the court entered its order reopening the case. Southwest Securities did not file a complaint to revoke Wakefield's discharge for his alleged failure to disclose an asset by filing an amended schedule before his discharge. 11 U.S.C. § 727(d)(2). Surely, if Southwest Securities believed Wakefield breached a duty to disclose the § 525(b) claim in an amended schedule prior to discharge, Southwest Securities would have filed a complaint to revoke the discharge, which included the discharge of Wakefield's debt to Southwest Securities.

Wakefield's attorney told him the claim was not property of the estate. Wakefield's attorney did not advise him to file an amended schedule to list the claim. The trustee, knowing Wakefield's employment had been terminated by Southwest Securities, took no action to pursue the cause of action for the estate. The trustee did not advise Wakefield to file an amended schedule. To the contrary, the trustee proceeded to complete his administration of the estate. Southwest Securities, despite having a claim to be discharged, took no action to suggest it believed Wakefield violated any disclosure duty. Furthermore, the claim is not property of the bankruptcy estate. Even if Wakefield had a duty to file an amended schedule to list the claim, Wakefield had no motive to conceal the claim.

The parties briefed whether Southwest Securities would suffer a detriment if the court did not apply the judicial estoppel doctrine. Wakefield's attorney discussed § 525(b) with Southwest Securities before Southwest Securities fired Wakefield. Southwest Securities had ample opportunity from that discussion going forward to address the situation. The trial court originally found that "Southwest did not prove that it relied on [Wakefield's] failure to list the claim against it to its substantial injury." *Wakefield v. Southwest Securities, Inc. (In re Wakefield)*, adversary no. 01–3697 at 22 (Bankr.N.D.Tex. Oct. 17, 2002). Furthermore, Southwest Securities had a full and fair opportunity to litigate the issue in this adversary proceeding. There has been no detriment to Southwest Securities, other than by its own actions.

The doctrine of judicial estoppel does not apply.

### Other Issues

The appellate court affirmed the finding of a § 525(b) claim. This court has found that the doctrine of judicial estoppel does not apply. The appellate court did not reach an issue on appeal regarding the award of $40,000 additional damages. This court has no basis not to apply the trial court's award. The appellate court has not mandated that this court reconsider that award. The appellate court affirmed the judgment of $121,951 for lost pay. Accordingly, this court shall re-enter the original trial court judgment.

### Order

Based on the foregoing,

**IT IS ORDERED** that the judgment entered on October 17, 2002 is reaffirmed as the judgment of this court. The court shall re-enter the judgment. Interest shall accrue from October 17, 2002 to the date of re-entry of the judgment at the rate of 1.59% per annum. Daniel Alan Wakefield is awarded post-judgment interest from the date of the re-entry of the judgment. Counsel for Wakefield shall submit a proposed final judgment for entry.