COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| JASON FERGUSON and | | No. 08-07-00051-CV |
| BOBBIE FERGUSON, | § | |
| | | Appeal from |
| Appellants, | § | |
| | | 95th District Court |
| v. | § | |
| | | of Dallas County, Texas |
| BUILDING MATERIALS | § | |
| CORPORATION OF AMERICA, | | (TC # 06-12009) |
| CPC LOGISTICS, INC., and | § | |
| ROBERT JAMES MATTOX, | | |
| | § | |
| Appellees. | | |

**O P I N I O N**

Jason and Bobbie Ferguson appeal the summary judgment granted in favor of Building Materials Corporations of America (BMCA), CPC Logistics, Inc. (CPC), and Robert James Maddox (collectively "Appellees"). We must decide whether the Fergusons' failure to list a personal injury claim in their bankruptcy schedules forecloses their claims. Because we believe it must, we affirm.

**FACTUAL SUMMARY**

On March 26, 2005, a tractor-trailer driven by Maddox collided with a vehicle and careened into a building in which Jason Ferguson was standing, causing it to collapse around him. The Fergusons filed suit against Appellees on April 12, 2005. While the lawsuit was still pending, the Fergusons filed a voluntary petition for bankruptcy under Chapter 13. As part of the bankruptcy proceedings, the Fergusons completed a "Statement of Financial Affairs" form on June 8, 2005, listing their lawsuit and noted its status as pending. They participated in a Section 341 creditors meeting with the bankruptcy trustee on July 12, 2005. The report from that meeting indicated the

Fergusons had a pending lawsuit in which they were the plaintiffs and bore the notation "filed suit on car wreck; requested pleadg." Also on June 8, 2005, the Fergusons completed their Debtor's Schedules. Schedule B required them to list their personal property, but they omitted the personal injury claims. On February 15, 2006, the Debtor's Final Chapter 13 Plan and Motion for Valuation was completed. It listed the Fergusons' secured and unsecured creditors, required the Fergusons to pay $16,980, and estimated payment of 7.25 percent toward general unsecured claims. On May 16, 2006, the bankruptcy court approved the plan.

On June 26, 2006, BMCA filed a motion for summary judgment claiming the Fergusons' lawsuit was barred by judicial estoppel because they had failed to identify their claims as assets in the bankruptcy schedules. CPC and Maddox followed with their own motion. The trial court granted both motions in separate orders. The Fergusons bring one issue for review, contending that judicial estoppel is inapplicable.

## JUDICIAL ESTOPPEL

The Fergusons contend judicial estoppel is inapplicable since they informed their bankruptcy attorney, their bankruptcy trustee, and the bankruptcy court about the personal injury lawsuit. The lawsuit was listed in the Statement of Financial Affairs, but it was omitted from Schedule B. The Fergusons claim the omission was inadvertent, unintentional, and a mere clerical error. They have since filed an amended Schedule B.

## Standard of Review

"Summary judgment is appropriate when there is no genuine issue as to any material fact and judgment should be granted in favor of the movant as a matter of law." *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). A defendant moving for summary judgment based on an affirmative defense must conclusively prove all of the elements of the affirmative defense. *KPMG Peat Marwick v. Harrison County Housing Finance Corp.,* 988 S.W.2d 746, 748 (Tex. 1999); *Mitchell v. Fort Davis State Bank*, 243 S.W.3d 117, 122 (Tex.App.--El Paso 2007, no pet.). When reviewing a motion for summary judgment, we must assume all of the evidence favorable to the non-movant is true, indulge every reasonable inference in favor of the non-movant, and resolve any doubts in favor of the non-movant. *Edwards v. Mesa Hills Mall Co. Ltd. Partnership,* 186 S.W.3d 587, 590 (Tex.App.--El Paso 2006, no pet.). Where the trial court does not specify the grounds upon which summary judgment is granted, as in this case, we must affirm if any of the grounds are meritorious. *FM Properties Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

## Requirements of Judicial Estoppel

Since judicial estoppel was raised in the context of a bankruptcy case, we apply federal law. *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Id.*, *citing Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing "fast and loose" with the courts for their own self interests. *Id.* Thus, the doctrine is intended to protect the judicial system rather than litigants. *Id.* The policies underlying the doctrine include "preventing internal inconsistency, precluding litigants from playing

fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 206, *citing United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993). The doctrine is generally applied when intentional self-contradiction is used to obtain an unfair advantage. *Id.*

Application of the doctrine is a matter of regional circuit law. *See Minnesota Mining and Manufacturing Company v. Chemque, Inc.,* 303 F.3d 1294 (Fed.Cir. 2002)(Citing *In re Coastal Plains*, the court stated that the law of the Fifth Circuit applied.). The Fifth Circuit has recognized three particular requirements for the doctrine of judicial estoppel. The party is judicially estopped if: (1) its position is clearly inconsistent with the previous one; (2) the court accepted the previous position; and (3) the non-disclosure was not inadvertent. *In re Superior Crewboats,* 374 F.3d 330, 335 (5th Cir. 2004); *In re Coastal Plains*, 179 F.3d at 206 & 210. Judicial acceptance "means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Id.* at 206, *citing Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988). A debtor's failure to disclose is "inadvertent" only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for concealment. *In re Coastal Plains*, 179 F.3d at 210.

*Duty to Disclose*

A debtor has an express, affirmative duty to disclose all assets including contingent and unliquidated claims. *Id.* at 208; *see* 11 U.S.C. § 521 (a)(1)(2005).[1] A debtor's duty to disclose is a continuing duty, and requires that a debtor disclose all potential causes of action. *Id.* The bankruptcy system depends on full disclosure by debtors because the interests of both the creditors,

---

[1] Debtor shall file a list of creditors and unless the court orders otherwise a schedule of assets and liabilities; a schedule of current income and current expenditures, and a statement of the debtor's financial affairs. *See* 11 U.S.C. § 521 (a)(1)(A) & (B)(i),(ii),(iii)(2005).

who plan their actions based on the supplied disclosure statements, and the bankruptcy court, which decides whether to approve the plan of reorganization on the same basis, are impaired when disclosure is incomplete. *Id.* Debtors are also obligated to update their schedules as necessary to assure full disclosure. *In re Superior Crewboats*, 374 F.3d at 333.

*Clearly Inconsistent Position*

Under the Bankruptcy Code, the Fergusons were required to file a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs. *See* 11 U.S.C. § 521 (a)(1)(A) & (B)(i),(ii),(iii)(2005). On June 8, 2005, the Fergusons listed the lawsuit under "Suits and administrative proceedings, executions, garnishments and attachments" in their Statement of Financial Affairs. They provided the cause number, listed the nature of the case as a "civil proceeding," identified the trial court as the 95th Judicial District Court in Dallas County, and noted the status as pending. The same day, they completed the Debtor's Schedules. They did not list the lawsuit in their "Schedule B" which listed all of their personal property. Both the Statement of Financial Affairs and the schedules were signed under penalty of perjury.

Appellees contend that the Fergusons' failure to disclose the lawsuit as an asset in their bankruptcy schedule is a prior inconsistent position. They rely upon a multitude of cases holding that debtors who failed to disclose claims in bankruptcy filings were judicially estopped. *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)(under penalty of perjury, debtor marked "X" in column indicating she had no "other contingent and unliquidated claims of [any] nature, and indicated she had no pending "suits and administrative proceedings," thus, debtor concealed lawsuit while bankruptcy case remained open); *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004)(debtors omission of personal injury claim from their mandatory bankruptcy

filings was tantamount to a representation that no such claim existed); *In re Coastal Plains*, 179 F.3d 197, 210 (5th Cir. 1999)(debtors omission of claims from schedules and stipulation represented that none existed); *Horsley-Layman v. Adventist Health System/Sunbelt, Inc.*, 221 S.W.3d 802, 807-08 (Tex.App.--Fort Worth 2007, pet. denied)(although debtor argued the bankruptcy court was aware of her claims because she mentioned them in motions with the court, debtor had a duty to amend her bankruptcy schedules and by omitting the claim from her schedules she represented that no such claim existed); *Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373, 381 (Tex.App.--Houston [1st Dist.] 2005, no pet.)(debtor's bankruptcy petition in which he stated he had assets under $50,000 clearly conflicted with his claims that he was entitled to receive a $79,700 bonus); *Dallas Sales Co. Inc. v. Carlisle Silver Co., Inc.*, 134 S.W.3d 928, 932 (Tex.App.--Waco 2004, pet. denied)(debtor failed to list lawsuit claims as assets in bankruptcy schedule, and debtor had knowledge of claims at time when could have amended schedules but did not do so); *Cleaver v. Cleaver*, 140 S.W.3d 771, 773 &775 (Tex.App.--Tyler 2004, no pet.)(debtor was judicially estopped from claiming trust account interest where debtor listed divorce action in statement of financial affairs but failed to list the suit in its schedule of assets and bankruptcy was discharged); *Stewart v. Hardie*, 978 S.W.2d 203, 208 (Tex.App.--Fort Worth 1998, pet. denied)(debtor's claim accrued prior to filing his bankruptcy petition and debtor did not file suit until two months after bankruptcy was discharged).

The Fergusons counter that their disclosure of the suit in the Section 341 creditors meeting and in the amended Schedule B distinguish this case from those we have just described. The creditors meeting was held on July 12, 2005, and the Fergusons tendered a certified copy of the hearing report. The hearing officer noted the Fergusons had a pending lawsuit in which they were a plaintiff or counter-claimant. The report stated the name and telephone number of trial counsel, as well as the notation "filed suit on car wreck; requested pleadg." The Fergusons also provided the

affidavit of Angela Allen, staff attorney for Tim Truman, the bankruptcy trustee. Allen stated that

the Fergusons had disclosed their personal injury lawsuit to the hearing officer at the Section 341

creditors meeting and had filed amended Schedules B and C on July 5, 2006. Her office has received

the amended schedules and was fully aware of the lawsuit. According to Allen, the Fergusons

submitted a request to modify their confirmed Chapter 13 plan to pay 100 percent of all unsecured

creditors' claims.[2]

Significantly, the creditors meeting and the scheduling amendments occurred *after* Appellees

filed their motions for summary judgment. Moreover, persuasive authority holds that disclosure

during the Section 341 meeting is insufficient. *In re Superior Crewboats*, 374 F.3d at 336 n.4.[3]

"The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that

no claims exist and then subsequently to assert those claims for his own benefit in a separate

---

[2] Allen's affidavit also stated:

> During a pending Chapter 13 Bankruptcy, all settlements or judgments of personal injury claims must be approved by my office, the Standing Chapter 13 Trustee, and the Court before any disbursement may be made. My office would object and not approve any personal injury settlement or judgment to be dispersed unless any non-exempt portion of the proceeds satisfied all unsecured proof of claims filed in this or any other bankruptcy case that Mr. Tim Truman is appointed as the Standing Chapter 13 Trustee. In this instant case, I would object to any non-exempt personal injury settlement or judgment that did not propose to pay the unsecured creditors.

[3] In Footnote 4, the Fifth Circuit stated in relevant part:

> The district court placed significant weight on the disclosure of the claim to the trustee at the creditors' meeting on July 12, 2001, concluding that once the trustee became aware of the claim, he had an affirmative duty to investigate its viability before discharging it. Thus, in the district court's view, scheduling the asset, without more, would not have altered the outcome. *See Superior I*, 2003 WL 133228 at *6. The district court's reasoning misses the mark.

> .    .    .

> The Eleventh Circuit rejected the bankruptcy court's reasoning, relied on by the district court here, that the trustee's lack of diligence in pursuing the claim excused the debtor's dishonesty. Rather, the court found that the 'foremost responsibility in this matter was for Barger to fully disclose her assets. She did not satisfy her duty. Instead, she dissembled to the trustee and indicated her discrimination claim had no monetary value. As such, the trustee can hardly be faulted for not further investigating Barger's discrimination suit.' *Id.*, *citing In re Barger*, 279 B.R. 900 (Bankr.N.D.Ga.2002). The present case is no different.

proceeding." *Cleaver*, 140 S.W.3d at 774, *citing Browning Mfg.*, 179 F.3d at 208. Nor are we inclined to hold that the Fergusons may avoid judicial estoppel by filing an amended Schedule B. An amendment, filed only after challenge by an adversary, suggests that a debtor should consider disclosing potential assets only if caught concealing them. *In re Superior Crewboats*, 374 F.3d at 336, *citing Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002). We thus conclude that the Fergusons took a clearly inconsistent position.

## Position Accepted by Court

We need address this second requirement only briefly. The Fergusons, in essence, claim "no harm, no foul" because they amended Schedule B such that their creditors ultimately recovered 100 percent on their claims. Because their debts were not discharged, they argue that the bankruptcy court never accepted their clearly inconsistent position. The Fifth Circuit has determined that the second element of judicial estoppel is satisfied when a bankruptcy court confirms a plan in a Chapter 13 proceeding. *Jethro*, 412 F.3d at 600.

## Unintentional and Inadvertent

To prove that a failure to disclose was inadvertent, the Fergusons must establish either that they did not know of the inconsistent position or that they had no motive to conceal it from the court. *Id.* at 600-01. The first prong of inadvertence looks to the debtors' knowledge of the claims. *Guerra v. Lehman Commercial Paper, Inc.*, No. H-06-1444, 2007 WL 419517 *6 (S.D.Tex. Feb. 5, 2007). The Fergusons readily concede knowledge. We turn now to the tipping point of this case: Did the Fergusons have a motive to conceal the claim?

"The courts frequently observe that a debtor who obtains a confirmation based on schedules that do not disclose contingent claims that are subsequently asserted have a motive to conceal those claims from the bankruptcy court." *Id., citing In re Coastal Plains*, 179 F.3d at 212-13. The

Fergusons' bankruptcy plan, confirmed by the bankruptcy court, entitled creditors to some seven cents on the dollar. Once the motions for summary judgment were filed and the schedules amended, the creditors were to be compensated dollar for dollar. Appellees contend that this more than demonstrates a motive to conceal.

The Fergusons respond that while it may be an *objective* motive, we must nevertheless consider their *subjective* motivation. The record contains an affidavit from their bankruptcy attorney acknowledging the scheduling error and calling it a simple clerical mistake. Similar claims have been unsuccessfully argued in other cases:

> If [the debtor] 'chose poorly' in his selection of counsel, such does not provide relief here. The Court finds that the conduct of [the debtor] does not operate to relieve him of the harsh consequences resulting from application of the doctrine. Some cases have not foreclosed debtors from pursuing claims not previously disclosed. *See generally, Pealo v. AAF McQuay, Inc.,* 140 F.Supp.2d 233 (N.D.N.Y. 2001); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355 (3rd Cir. 1996) (requiring a showing of intentional fraud). However, these cases are inapposite to the rule of law in this circuit.

*Estel v. Bigelow Management, Inc.*, 323 B.R. 918, 923 (E.D.Tex. 2005).

We turn now to a decision from the Northern District of Texas, which the Fergusons claim defeats summary judgment. *See Wakefield v. SWS Securities, Inc.*, 293 B.R. 372 (N.D. Texas 2003). Applying a purely objective standard, the bankruptcy court held that Wakefield did not have a motive to conceal because, "objectively, [Wakefield's] concealment and subsequent discharge would have had no effect on such claim because it was owned by him and not by his estate . . . ." *Id.* at 379. In vacating and remanding, the district court concluded that the bankruptcy court had erred in construing the "motive test" as purely objective, "devoid of any subjective component." *Id.* at 380. Because subjective intent is part of the equation, the Fergusons contend they have raised a genuine issue of material fact.

*Wakefield* is noteworthy for its peculiar fact pattern. Wakefield was a securities broker who had worked for several companies before joining SWS Securities. At each position, he obtained advances against commissions that were forgiven over a negotiated period of time. A broker who leaves employment before the loan is forgiven becomes obligated to pay the balance. Wakefield owed money to two brokerage firms during his employment with SWS. One of these debts was arbitrated by the National Association of Securities Dealers and Wakefield was ordered to pay $90,675. He was notified that his broker's license would be suspended unless he paid the award, made arrangements for payments, or demonstrated that he had filed for bankruptcy. When Wakefield told his branch manager that he might need to file for bankruptcy, the manager cautioned that filing would be grounds for termination. Wakefield filed under Chapter 7 and was terminated. SWS had creditor status in the bankruptcy because Wakefield owed the firm $98,300 for a front-money loan. On the date of discharge, Wakefield learned that he had a potential claim under Section 525(b) of the Bankruptcy Code. His attorney declined to represent him in that litigation and his successor attorney opted to file a motion to reopen the bankruptcy case to bring the litigation in bankruptcy court. When he pursued an adversary proceeding alleging claims of discrimination in violation of Section 525(b), SWS asserted the defense of judicial estoppel, contending that Wakefield had failed to include the claim in his bankruptcy schedules. The bankruptcy court rejected the defense and found that SWS had violated Section 525(b) by terminating Wakefield's employment solely because he had filed for bankruptcy protection. On appeal, SWS complained that the bankruptcy court had improperly applied an objective standard to ascertain whether Wakefield had a motive to conceal his discrimination claim. Simply stated, the bankruptcy court found that Wakefield had no objective motive to conceal an asset that did not need to be disclosed since it was a personal asset and not part of the bankruptcy estate. *Wakefield*, 293 B.R. at 379. The district court

disagreed, concluding "that an assessment of Wakefield's motive not to disclose his § 525(b) claim must include subjective considerations." *Id.* at 381.

On remand, the bankruptcy court determined that Wakefield could have no objective motive to conceal because the claim did not exist as of the commencement of the case. *See Wakefield v. Southwest Securities, Inc.*, 312 B.R. 333, 340 (N.D. Texas 2004). And because he had no obligation to file an amended schedule to list the claim, he lacked a subjective motive as well. *Id.* at 342. In a not-so-subtle aside, the court explained the distinction. "The importance of reading the Bankruptcy Code as a whole cannot be overstated." *Id.* at 338. Chapter 13 cases impose different obligations on a debtor than Chapter 7 cases. *Id.* Under Chapter 13, the bankruptcy estate includes property acquired after the petition is filed but before the case is closed, dismissed, or converted. *Id.* For that reason, the Chapter 13 debtor has a continuing duty to disclose. These provisions have no application in Chapter 7 proceedings. *Id.* Indeed, *Wakefield* has been discounted where an objective motive exists. *See Benton v. Ryan's Family Steakhouse*, 222 F.R.D. 112, 114. (S.D. Miss. 2004)(finding reliance on *Wakefield* misplaced where the debtor plainly had motive to conceal her claims from the standpoint of an objective analysis).

Moreover, were a subjective analysis required in every case, summary judgments would be universally unavailable. The shear plethora of cases in the Fifth Circuit upholding summary judgment on virtually identical facts belies this assertion. For all of these reasons, we overrule the Fergusons' sole point. The judgment of the trial court is affirmed.

June 12, 2008

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Chew, C.J., dissenting

# DISSENTING OPINION

The majority opinion follows the "shear plethora of cases in the Fifth Circuit upholding summary judgments on virtually identical facts." I must respectfully dissent because I believe those authorities to be an unconscionable insistence on form that enforces a penalty disproportionate to the primary obligation of a debtor in bankruptcy.

11 U.S.C. § 521 provides that: "[t]he debtor shall - (1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." The law suit here was reported in the statement of financial affairs, but initially omitted in the schedule of assets and liabilities.

"Official Form 6 - Schedules" provides an alphabet of fill-in-the-blank schedules, – A through J. The initial omission in this case occurred in "Schedule B-Personal Property" which itemizes 35 types of personal property. As a "contingent and unliquidated claim" the appellant's law suit apparently should have been listed under item "18. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property." It was not listed in the initial filing. It appears that the amended Schedule B listed the law suit under item "18 - Other liquidated debts owing debtor including tax refunds."

"Official Form 7 - Statement of Financial Affairs" is a series of 25 fill-in-the blank questions. Question 4 is titled: "Suits and administrative proceedings, executions, garnishments and attachments[.]" In the initial bankruptcy petition, the appellants disclosed the pending lawsuit in that question, providing the caption and style of the suit, nature, court and status.

I simply do not believe that an omission on a fill-in-the blank government form, whether a bankruptcy form, a naturalization petition or a liquor license application, standing alone, can be the

basis, as a matter of law, of a prior inconsistent position that would support judicial estoppel. It also seems to me that, in fact, there was no omission in their basic reporting obligation as debtors under 11 U.S.C. § 521; the law suit was listed in the Statement of Financial Affairs. Finally, as I understand the purpose of judicial estoppel, it is to protect the integrity of the judicial system and not the litigants. I find nothing in the facts of this case to suggest that the integrity of the judicial system, specifically the bankruptcy case, was breached in any material way.

I respectfully dissent.


June 12, 2008

DAVID WELLINGTON CHEW, Chief Justice